UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------ X

AIDA BARBOSA,

              Plaintiff,

    - against -

CONTINUUM HEALTH PARTNERS,
INC., BETH ISRAEL MEDICAL
CENTER, and JACOB PERLOW
HOSPICE CORPORATION,

              Defendants.

------------------------------------------------------ X

**OPINION AND ORDER**

**09 Civ. 6572 (SAS)**

SHIRA A. SCHEINDLIN, U.S.D.J.:

## I.    INTRODUCTION

        Aida Barbosa brings this action against Jacob Perlow Hospice

Corporation ("Jacob Perlow") and its parent companies, Beth Israel Medical

Center ("Beth Israel") and Continuum Health Partners, Inc. ("Continuum Health"),

claiming that she was subjected to a hostile work environment and discharged on

the basis of race and age in violation of both federal and state law.  Specifically,

Barbosa's race discrimination claims arise under Title VII of the Civil Rights Act

of 1964 ("Title VII"), Section 1981 of Title 42 of the United States Code ("Section

1981"), the New York State Human Rights Law ("NYSHRL"), and the New York

1

City Human Rights Law ("NYCHRL").  Her age discrimination claims arise under

the Age Discrimination in Employment Act ("ADEA"), the NYSHRL, and the

NYCHRL.  Defendants move to dismiss Barbosa's Second Amended Complaint

for failure to state a claim upon which relief can be granted pursuant to Rule

12(b)(6) of the Federal Rules of Civil Procedure.  Defendants assert, inter alia, that

(1) Barbosa's Title VII and ADEA claims are untimely, (2) Continuum Health and

Beth Israel were not her employers, and (3) she fails to state a claim for hostile

work environment and discriminatory discharge.  For the reasons discussed below,

defendants' motion is granted and plaintiff is granted leave to replead her Section

1981 claims for race discrimination and her state and local claims for race and age

discrimination.

## II.    BACKGROUND

### A.    Factual Background[1]

Barbosa, currently a fifty-six year old Hispanic woman, began

working for Jacob Perlow and Beth Israel in 1990.[2]  Continuum Health "owned,

operated, managed, maintained, and controlled" Jacob Perlow and Beth Israel[3] and

---

[1]     This factual background is drawn from the Second Amended
Complaint ("Complaint").

[2]     *See id.* ¶ 16.

[3]     *Id.*

2

Barbosa was a "joint employee" of all three defendants at all times relevant to her Complaint.[4]  Barbosa's last position was "billing supervisor," to which she was promoted in July 2007.[5]

On or about March 2008, Barbosa's supervisor, Charlotte Smith, "harassed and threatened" her during a meeting held for the purpose of updating Smith on billing collection efforts.[6]  Smith demanded that Barbosa deviate from "CMS and National Government Service regulations" in invoicing clients and also ordered Barbosa "to train non-Continuum employees."[7]  When Barbosa refused to deviate from the regulations, Smith "became infuriated" and told Barbosa that "she [Smith] was the boss and whatever she said was going to be done."[8]

A month later, on or about April 30, 2008, Smith ominously informed Barbosa that she had asked a former employee, Clarissa Cassanetta, a Filipina under the age of forty, to return to work in the billing office.[9]  Smith indicated that Cassanetta refused to return to any position other than "lead biller," the position

---

[4]     *Id.* ¶ 14.

[5]     *Id.* ¶ 16.

[6]     *Id.* ¶ 19.

[7]     *Id.*

[8]     *Id.*

[9]     *See id.* ¶ 20.

3

that Barbosa then held.[10]

      In July 2008, Barbosa was given a "substandard" job performance evaluation which she alleges "did not reflect her actual performance."[11]  She claims that she consistently performed her work "in a manner that met and exceeded the reasonable expectations of her employer."[12]  As late as January 2008, the President and CEO of Jacob Perlow indicated in a sworn affidavit that Barbosa was "an employee in good standing at [Jacob Perlow] for the past seventeen years" and had "a stellar record during her tenure."[13]

      Smith threatened and yelled at Barbosa on two more occasions on or about August 2009.[14]  During the first incident, Smith threatened Barbosa during a meeting because "[Barbosa] had inquired about her cost of living adjustment."[15]  During a second meeting discussing Barbosa's substandard performance evaluation, Smith "angrily" refused to change anything in the evaluation and yelled

---

[10]    *Id.*

[11]    *Id.* ¶ 20.

[12]    *Id.* ¶ 17.

[13]    *Id.* ¶ 18; 1/30/08 Affidavit of Carolyn Cassin, then President and CEO of defendant Jacob Perlow ("Cassin Aff."), Ex. F to Plaintiff's Memorandum of Law in Opposition to Defendants' Rule 12(b)(6) Motion to Dismiss ("Pl. Mem.").

[14]    *See* Complaint ¶ 21.

[15]    *Id.*

4

at Barbosa when Barbosa refused to sign the evaluation.[16] Although "Corporate

Human Resource guidelines" did not require employees to sign their evaluations,

Smith threatened to include an adverse note in Barbosa's file indicating that she

had refused to sign.[17]

On or about August 14, 2009, Barbosa asked another supervisor,

Carol Lowe, for the name and number of the "Corporate EEO officer at Continuum

Health."[18] Although Lowe indicated to Barbosa that Lowe herself was the EEO

Officer, Barbosa was apparently not satisfied and again requested the name and

number of Continuum Health's EEO Officer.[19]  After receiving no answer, Barbosa

contacted Corporate Labor and Relations at Continuum Health regarding her

"situation" with Smith and was advised to seek a leave of absence, which Smith

denied.[20]  On November 20, 2008, defendants terminated Barbosa effective

December 1, 2008, and replaced her with Clarissa Cassanetta.[21]

In addition, defendants "refused to allow [Barbosa] and other

---

[16]     *Id.* ¶ 22.

[17]     *Id.*

[18]     *Id.* ¶ 23.

[19]     *See id.*

[20]     *Id.*

[21]     *See id.* ¶ 24.

5

Hispanics to speak Spanish during working hours."[22]

### B.    Procedural Background

On or about November 28, 2008, Barbosa filed a Charge of Discrimination with the United States Equal Employment Opportunity Commission ("EEOC").[23]  After conducting an investigation, the EEOC issued Barbosa a Notice of Right to Sue (a "right-to-sue letter") dated April 21, 2009.[24] Barbosa declares that she was away from home from April 16, 2009 through April 27, 2009, and that she discovered the right-to-sue letter upon her return on April 27, 2009.[25]  Barbosa filed this lawsuit on July 24, 2009.

## III.   LEGAL STANDARD

The Supreme Court's recent landmark decisions in *Bell Atlantic Corporation v. Twombly*[26] and *Ashcroft v. Iqbal*[27] arguably shifted pleading standards from "simple notice pleading" to a "more heightened form of

---

[22]     *Id.* ¶ 26.

[23]     *See id.* ¶ 28.

[24]     *See id.* ¶ 5.

[25]     *See* 11/1/09 Declaration of Barbosa ("Barbosa Decl."), Ex. E to Pl. Mem.

[26]     550 U.S. 544 (2007).

[27]     — U.S. —, 129 S. Ct. 1937, 1955 (2009).

pleading,"[28] requiring that allegations in a complaint meet a standard of "plausibility" to survive a motion to dismiss.[29]  A claim satisfies the plausibility standard "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[30] While plausibility "is not akin to a probability requirement," plausibility requires "more than a sheer possibility that a defendant has acted unlawfully."[31]  Pleading facts that are "merely consistent with a defendant's liability"[32] fails to "nudge[ ] [the plaintiff's] claims across the line from the conceivable to plausible."[33]  In reviewing a motion to dismiss, the court must "accept as true all of the factual allegations contained in the complaint"[34] and "draw all reasonable inferences in the plaintiff's favor."[35] However, the court need not accord "[l]egal conclusions,

---

[28]     *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009).

[29]     *Twombly*, 550 U.S. at 564.

[30]     *Iqbal*, 129 S. Ct. at 1949 (quotation omitted).

[31]     *Id.* (quotation marks omitted).

[32]     *Id.* (quotation marks omitted).

[33]     *Twombly*, 550 U.S. at 570.

[34]     *Id.* at 572.  *Accord Rescuecom Corp. v. Google Inc.*, 562 F.3d 123, 127 (2d Cir. 2009).

[35]     *Ofori-Tenkorang v. American Int'l Group, Inc.*, 460 F.3d 296, 298 (2d Cir. 2006).

7

deductions or opinions couched as factual allegations . . . a presumption of truthfulness."[36]

With respect to employment discrimination cases, in *Swierkiewicz v. Sorema N.A.*,[37] which preceded *Twombly* and *Iqbal*, the Supreme Court rejected a heightened factual pleading requirement.  Specifically, the Court held that an employment discrimination complaint need not allege specific facts establishing a prima facie case of discrimination.[38]  Rather, "the ordinary [pre-*Twombly*] rules for assessing the sufficiency of a complaint apply."[39]

The *Twombly* court held that *Swierkiewicz* remains good law.[40] However, some courts and commentators have concluded that *Twombly* and *Iqbal* repudiated *Swierkiewicz*, at least to the extent that *Swierkiewicz* relied upon pre-

---

[36]    *In re NYSE Specialists Sec. Litig.*, 503 F.3d 89, 95 (2d Cir. 2007) (quotation omitted).

[37]    534 U.S. 506 (2002).

[38]    *See id.* at 514.

[39]    *Id.* at 511.

[40]    *See Twombly*, 550 U.S. at 569-70 ("Plaintiffs say that our analysis runs counter to *Swierkiewicz* .... [H]owever, *Swierkiewicz* . . . simply re-emphasized . . . that . . . a heightened pleading standard for Title VII cases was contrary to the Federal Rule[s] . . . .  Here, in contrast, we do not require heightened fact pleadings of specifics . . . .") (quotation marks and citations omitted).

8

*Twombly* pleading standards.[41] Reconciling *Swierkiewicz*, *Twombly*, and *Iqbal*, a complaint need not establish a prima facie case of employment discrimination to survive a motion to dismiss; however, "the claim must be facially plausible and must give fair notice to the defendants of the basis for the claim."[42]

## IV.   APPLICABLE LAW

### A.   Timeliness: Title VII and ADEA

In order for Title VII and ADEA claims to be timely, they must be filed within ninety days of the claimant's receipt of the EEOC's right-to-sue letter.[43] In assessing timeliness, a court may assume that a right-to-sue letter was mailed on the date shown on the document.[44] A court may also assume that a mailed document was received three days after mailing.[45] However, these presumptions are not irrebutable.[46] "If a claimant presents sworn testimony or

---

[41]     *See, e.g.*, *Fowler*, 578 F.3d at 211 ("We have to conclude, therefore, that because *Conley* has been specifically repudiated by both *Twombly* and *Iqbal*, so too has *Swierkiwicz*, at least insofar as it concerns pleading requirements and relies on *Conley*.").

[42]     *Fowler v. Scores Holding Co.*, — F. Supp. 2d —, No. 08 Civ. 7796, 2009 WL 5178475, at *2 (S.D.N.Y. Dec. 28, 2009).

[43]     *See Sherlock v. Montefiore Med. Ctr.*, 84 F.3d 522, 525 (2d Cir. 1996) (citing *Baldwin County Welcome Ctr. v. Brown*, 466 U.S. 147 (1984) (per curiam)).

[44]     *See id.* at 526.

[45]     *See id.* at 525.

[46]     *See id.* at 526.

other admissible evidence from which it could reasonably be inferred either that the notice was mailed later than its type-written date or that it took longer than three days to reach her by mail, the initial presumption is not dispositive."[47]

While the ninety-day filing requirement is akin to a statute of limitations[48] and is "not to be disregarded by courts out of a vague sympathy for particular litigants,"[49] it is subject to the doctrine of equitable tolling.[50]  However, "federal courts have typically extended equitable relief only sparingly," and "have been much less forgiving where the claimant failed to exercise due diligence in preserving [her] legal rights."[51]  As one district court noted, the ninety-day filing requirement can only be tolled for reasons such as "(1) the claimant received inadequate notice, (2) there is a pending motion for appointment of counsel, (3) the Court misled the plaintiff and as a result the plaintiff believed he had done everything required of him, or (4) the defendant engaged in affirmative

---

[47]    *Id.*

[48]    *See Vollinger v. Merril Lynch & Co.*,198 F. Supp. 2d 433, 440 (S.D.N.Y. 2002) (citing *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 285, 393 (1982)).

[49]    *Baldwin*, 466 U.S. at 152.

[50]    *See Irwin v. Department of Veterans Affairs*, 498 U.S. 89, 95 (1990).

[51]    *Id.* at 96.

10

misconduct, encouraging the plaintiff to take no action."[52]  "[I]n the absence of a recognized equitable consideration, the court cannot extend the limitations period by even one day."[53]

**B.    Barbosa's Employer:  Section 1981, the NYSHRL, and the NYCHRL**

Several doctrines have been developed to allow a plaintiff to assert employer liability in the employment discrimination context against entities that are not her formal, direct employer.  These doctrines apply under both Section 1981 and the local New York anti-discrimination statutes.[54]  Under one such doctrine – the "joint employer" doctrine – an employee formally employed by one entity can be found to be constructively employed by another entity and may therefore state an employment discrimination claim against her constructive

---

[52]      *Rosquist v. NYU Med. Ctr.*, No. 97 Civ. 8566, 1998 WL 702295, at *5 (S.D.N.Y. Oct. 7, 1998) (citing *Baldwin*, 466 U.S. at 151), *aff'd*, 199 F.3d 1323 (2d Cir. 1999).

[53]      *Johnson v. Al Tech Specialties Steel Corp.*, 731 F.2d 143, 146 (2d Cir. 1984) (citation omitted).

[54]      *See Fowler*, 2009 WL 5178475, at *4 (citing *Arcuelo v. On-Site Sales & Mktg., LLC*, 425 F.3d 193, 197-98 (2d Cir. 2005)) (applying the "single employer" and "joint employer" doctrines in the contexts of the NYSHRL and the NYCHRL); *Snyder v. Advest, Inc.*, No. 06 Civ. 1426, 2008 WL 4571502, at * 6 (S.D.N.Y. June 8, 2008) (applying the "single employer" doctrine in the context of Section 1981).

11

employer as well as her direct employer.[55]  "A joint employer relationship may be found to exist where there is sufficient evidence that the respondent had immediate control over the other company's employees."[56]

## C.    Employment Discrimination Based on Race and Age: Section 1981, the NYSHRL, and the NYCHRL

Employment discrimination claims brought under Section 1981, the NYSHRL, and the NYCHRL are generally analyzed under the same evidentiary framework that applies to Title VII and ADEA claims.[57]  In order to state a prima facie case of race or age discrimination, a plaintiff must show that:  (1) she was a member of a protected class, (2) she was qualified for her position, (3) she suffered

---

[55]    *See Fowler*, 2009 WL 5178475, at *4.

[56]    *Id.* (citing *NLRB v. Solid Waste Servs., Inc.*, 38 F.3d 93, 94 (2d Cir. 1994)).

[57]    *See Leibowitz v. Cornell Univ.*, 584 F.3d 487, 498 n.1 (2d Cir. 2009) (age discrimination claims brought under New York law are analyzed under the ADEA framework); *Patterson v. County of Oneida, N.Y.*, 375 F.3d 206, 225-27 (2d Cir. 2004) (applying Title VII hostile work environment analysis to a hostile work environment claim under Section 1981); *Brennan v. Metropolitan Opera Ass'n, Inc.*, 192 F.3d 310, 316-18 & n.2 (2d Cir. 1999) ("The same standards govern disparate treatment claims arising under either Title VII or the ADEA. . . . Employment discrimination claims brought under the NYSHRL are analyzed identically to claims under the ADEA and Title VII. . . .  The analysis of the hostile working environment theory of discrimination is the same under the ADEA as it is under Title VII."); *Lu v. Chase Inv. Servs. Corp.*, No. 07 Civ. 1256, 2009 WL 4670922, at *6-7 (S.D.N.Y. Dec. 9, 2009) (claims for racial discrimination under Section 1981 and New York law are analyzed under the same framework as Title VII claims).

an adverse employment action, and (4) the circumstances of the adverse action give rise to an inference of discrimination based on her membership in the protected class.[58] The last element may be established, for example, by showing that a similarly situated person not in the protected class was treated more favorably than the plaintiff.[59] While a plaintiff alleging racial discrimination need only establish race as a "motivating factor" of the adverse employment action, a plaintiff alleging age discrimination must demonstrate that age was the "but-for" cause of the adverse action.[60]

A hostile work environment claim is actionable discrimination when "the workplace is 'permeated with discriminatory intimidation, ridicule, and insult that is sufficiently pervasive to alter the conditions of the victim's employment . . . .'"[61] In evaluating a hostile work environment claim, the court must look to "'the totality of the circumstances'" and must consider "'the frequency of the

---

[58]    *See Leibowitz,* 584 F.3d at 498; *Lu,* 2009 WL 4670922, at *2;

[59]    *See Shumway v. United Parcel Service,* 118 F.3d 60, 63 (2d Cir. 1997).

[60]    *See Leibowitz,* 584 F.3d at 498 n.2 (citing *Gross v. FBL Fin. Servs., Inc.,* — U.S. —, 129 S.Ct. 2343, 2350-51 (2009)).

[61]    *Brennan, Inc.,* 192 F.3d at 318 (quoting *Harris v. Forklift Sys., Inc.,* 510 U.S.17, 21 (1993)). *Accord Pacheco v. New York Presbyterian Hosp.,* 593 F. Supp. 2d 599, 623 (S.D.N.Y. 2009) (quoting *Terry v. Ashcroft,* 336 F.3d 128, 148 (2d Cir. 2003)).

13

discriminatory conduct[,] its severity[,] whether it is physically threatening or humiliating or a mere offensive utterance[,] and whether it unreasonably interferes with an employee's work performance.'"[62]

   As discussed above, however, to survive a motion to dismiss, a plaintiff need not allege specific facts establishing a prima facie case of discrimination.  A complaint is sufficient if it states a facially plausible claim and gives fair notice to defendants of the basis for the claim.[63]

   **D.** **Amendments to Pleadings**

   "Rule 15(a) provides that, other than amendments as a matter of course, a party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires."[64]  "[W]hether to permit a plaintiff to amend its pleadings is a matter committed to the Court's sound discretion."[65]  However, the Supreme Court has explained that

   [i]f the underlying facts or circumstances relied upon by a plaintiff

---

[62]  *Terry*, 336 F.3d at 148 (quoting *Harris*, 510 U.S. at 23).

[63]  *See Fowler*, 2009 WL 5178475, at *2.

[64]  *Slayton v. American Express Co.*, 460 F.3d 215, 226 n.10 (2d Cir. 2006) (quotation marks omitted).

[65]  *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007) (quotation marks omitted).

> may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits. In the absence of any apparent or declared reason — such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc. — the leave sought should, as the rules require, be "freely given."[66]

Accordingly, "'[i]t is the usual practice upon granting a motion to dismiss to allow leave to replead.'"[67]

## IV.   DISCUSSION

### A.   Barbosa's Title VII and ADEA Claims Are Untimely

Barbosa was obligated to file her Title VII and ADEA claims within ninety days of receipt of the right-to-sue letter. I will assume that the EEOC mailed this letter on April 21, 2009, the date shown on the letter. I will further assume that the letter was received in Barbosa's mailbox three days later, on April 24, 2009. Accordingly, Barbosa was required to file her Title VII and ADEA claims by July 23, 2009, unless she can rebut these presumptions or support a claim for equitable tolling of the ninety-day filing requirement. Barbosa filed her

---

[66]   *Foman v. Davis*, 371 U.S. 178, 182 (1962). *Accord, e.g., Jin v. Metropolitan Life Ins. Co.*, 310 F.3d 84, 101 (2d Cir. 2002).

[67]   *Vacold LLC v. Cerami*, No. 00 Civ. 4024, 2002 WL 193157, at *6 (S.D.N.Y. Feb. 6, 2002) (quoting *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991)). *Accord Hayden v. County of Nassau*, 180 F.3d 42, 53 (2d Cir. 1999) ("When a motion to dismiss is granted, the usual practice is to grant leave to amend the complaint.").

suit on July 24, 2009, one day after the end of the statutory period.

Without considering the admissibility of Barbosa's unsworn statement that she was out of town until April 27, 2009, Barbosa's claimed absence from home fails to rebut the presumption that the right-to-sue letter arrived on April 24, 2009, three days after the date on the letter. Barbosa does not offer any evidence that the letter was not mailed on April 21, 2009, nor does she offer any evidence that it did not arrive in her mailbox three days later. She merely claims that she was not there to retrieve it. Accordingly, the presumption of receipt by April 24, 2009, remains unrebutted.

Barbosa's absence from home for three days out of the ninety-day period also fails to support a claim for equitable tolling. With eighty-seven days remaining to file her Title VII and ADEA claims from the date she discovered the right-to-sue letter in her mailbox, Barbosa had adequate notice of her right to sue. Barbosa was also represented by counsel since the date she filed her initial Charge of Discrimination with the EEOC. Neither the court nor defendants misled Barbosa or engaged in any misconduct that would have led her to believe she had done everything required of her or that would have encouraged her to take no action. Accordingly, in the absence of sufficient justification for tolling the ninety-day filing requirement, this Court cannot extend the statutory limitation period. Barbosa's Title VII and ADEA claims are untimely and, as such, are hereby

16

dismissed with prejudice.

## B.   Barbosa Has Sufficiently Alleged that She Was Jointly Employed by Jacob Perlow, Beth Israel, and Continuum Health

In order to state a claim against the defendants other than her direct, formal employer on the basis of the "joint-employer" doctrine, Barbosa must plead enough facts so that the claim is facially plausible and gives fair notice to defendants of her theory of employer liability.

Barbosa has met this standard.  She clearly alleges that she had been a "joint-employee" of Jacob Perlow, Beth Israel, and Continuum Health, and that Continuum Health operated, managed, and controlled Jacob Perlow and Beth Israel.  She also alleges that she contacted or attempted to contact various officers at Continuum Health about her situation.  While she has not pled extensive facts related to Continuum Health's and Beth Israel's control over Jacob Perlow's employees, defendants are far more likely to be in possession of those facts than Barbosa.  Accordingly, defendants' motion to dismiss on the grounds that Continuum Health and Beth Israel were not her employers is denied.[68]

## C.   Barbosa Fails to State a Claim for Unlawful Termination and Hostile Work Environment

In the somewhat disjointed series of events that Barbosa alleges led to her termination, Barbosa fails to raise a plausible inference that she was terminated

---

[68]   This motion can be renewed following the close of discovery.

on account of race or age, despite the fact that she was ultimately replaced with a

Filipina under the age of forty. Rather, the allegations raise the inference that she

was terminated on account of a poor working relationship with Smith, her

supervisor, which deteriorated after Barbosa refused to follow Smith's billing

instructions. Nothing in the Complaint even hints that race motivated or that age

caused the tensions between Barbosa and Smith. Thus, the fact that Barbosa's

replacement was Filipina and under forty years old appears to be merely

happenstance. Barbosa has not identified any similarly situated individual, outside

of her protected race and age classes, who was treated any differently under similar

circumstances.

   Nor has Barbosa sufficiently pled her hostile work environment claim.

The only additional allegation that Barbosa asserts with respect to this claim is

defendants' prohibition of speaking Spanish in the workplace. However, the

enforcement of an English-only policy, in and of itself, does not constitute a hostile

work environment on the basis of race.[69] The Complaint makes no mention of the

frequency or severity of enforcement or how the language policy interfered with

Barbosa's job performance. Nor does Barbosa contend that the policy itself was

---

[69]     *Cf. Pacheco*, 593 F. Supp. 2d. at 624 (on summary judgment, plaintiff
failed to raise a genuine issue of material fact that defendant's English-only policy
created a hostile work environment when plaintiff was bilingual, no disparaging
remarks were directed at his national origin, and no other employees complained
about the policy).

18

enforced disparately or adopted with discriminatory purpose.

## V.      CONCLUSION

For the foregoing reasons, defendants' motion to dismiss is granted.

Barbosa's Title VII and ADEA claims are dismissed with prejudice, and her

Section 1981, NYSHRL, and NYCHRL claims are dismissed without prejudice.

Barbosa is granted leave to file a Third Amended Complaint consistent with this

Opinion within twenty (20) days of this Order.  This shall be the final opportunity

to amend her complaint.  The Clerk of the Court is directed to close this motion

(Docket No. 19).

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:      New York, New York
            March 5, 2010

19

## - Appearances -

**For Plaintiff**:

Raymond Barbosa, Esq.
Barbosa Law Group, P.C.
100 West Monroe Street, Suite 711
Chicago, Illinois 60603
(312) 223-9885

**For Defendants:**

Ricki E. Roer, Esq.
Nancy V. Wright, Esq.
Wilson, Elser, Moskowitz, Edelman & Dicker, LLP
150 East 42nd Street
New York, New York 10017
(212) 490-3000

20